IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Jose Antonio Anzaldo, | ) | C/A No. 8:14-cv-03175-RMG-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Cecilia Reynolds, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on a motion for summary judgment filed by Respondent. [Doc. 11.] Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on August 1, 2014.[1] [Doc. 1.] On October 10, 2014, Respondent filed a motion for summary judgment and a return and memorandum to the Petition. [Docs. 11, 12.] The same day, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 13.] On December 12, 2014, Petitioner filed a response in opposition to Respondent's motion. [Doc. 19.]

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, this action was filed on August 1, 2014. [Doc. 1-6 (envelope stamped as received by the prison mail room on August 1, 2014).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## **BACKGROUND**

Petitioner is presently confined in the South Carolina Department of Corrections at Kershaw Correctional Institution pursuant to orders of commitment of the Saluda County Clerk of Court. [Doc. 1.] In October 2008, Petitioner was indicted for criminal sexual conduct with a minor - 2nd degree and criminal sexual conduct with a minor - 1st degree. [App. 101–04.[2]] On April 7, 2009, represented by John Earl Duncan ("Duncan"), Petitioner pled guilty as indicted and received a sentence of ten years imprisonment on each charge, to run concurrently. [App. 1–15.] No direct appeal was filed.

**PCR Proceedings**

*First PCR Application*

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on February 17, 2010. [App. 16–25.] Petitioner raised the following grounds for relief, quoted substantially verbatim:

> (a)    Counsel failed to ad[e]quat[e]ly investigate my case
>
> (b)    Counsel failed to motion for a pre-trial conf[e]rence
>
> (c)    Subject matter jurisdiction on indictments failure to put me on notice

[App. 18.] In support of his grounds for relief, Petitioner provided the following facts, quoted substantially verbatim:

---

[2]The Appendix can be found at Docket Entry Number 12-1.

"See attached pages 1 of 2 and 2 of 2"[3]

Had counsel investigated to prepare for a defense and challenge the sufficiency of the chain of custody and evidence against me and informed me of the essential elements of the crime of 1st and 2nd criminal sexual conduct w/a minor I would not have pled guilty, but insisted on going to trial, Counsel never went over the chain of custody with me nor did he inform me of the requirements of the individuals having possession/custody of the evidence that is required by South Carolina Criminal Rules of Court (Rule) (6) (B) nor did counsel ever show/go over the Brady discovery documents of any and all of the alleged evidence that was against me, further more counsel's failure to inform me of any of the applicable laws/rules of the State of South Carolina as well as any chances I had at trial made me and my guilty plea unknowingly and unintelligently because of counsel's performance I was not fully aware nor did I have a full understanding of any and all of the evidence as well as chances that I may have had if I would have gone to trial. Had counsel challenged the sufficiency of the chain of custody/evidence there is a reasonable probability that I would not have pled guilty but insisted on going to trial, counsel failure to investigate and inform me of my due process right to have a pre-trial conf[e]rence to challenge the evidence against me violated my 5th, 6th, and 14th amendments due process rights of the S.C. Const. and the U.S. Const.

<u>Ineffective Assistance of Counsel</u>:
A)    Failed to investigate
B)    Failed to review discovery
C)    Failed to "motion for a pre-trial conf[e]rence
D)    Failed to challenge chain of custody
E)    Failed to inform of the essential elements of the crime

Subject matter jurisdiction

Indictment and information without valid indictment district court is without jurisdiction over criminal proceeding <u>Fed. Rules. Cr. Proc. Rule 7(A)</u>, 18 U.S.C.A. Const. Amend. 5 and under § <u>S.C. Code of Law (17 title)</u>. Also Soe, 523 F.2d 193 (1975)  For example, in <u>United States v. Maklin</u>, supra, were

---

[3]The text from the attached pages is included here in the Court's recitation of the facts Petitioner alleged in support of his grounds for relief in his first PCR application.

the term of the grand jury had expired and the indictment returned by it was legally null and void, absent an indictment, also see <u>339 S.E.2d 127</u>, Requirement true billed.  Also see where as in defendant case he was not indicted within 90 days time limit by law, where as here in vein, <u>504 F.2d at 1177</u>.  An indictment returned by grand jury <u>sitting</u> beyond its legally authorized time is a "nullity" and see <u>U.S. v. Smith 669 F. Supp 182</u>  I can show where the Court violated its own Rule (5) within itself sine I was not indicted within the 90 days, Rules under Rule 3(c) Administrative Law and Court Procedure the law is the law and we must follow the law or evidence irrelevant to the issue or otherwise its not the law.  in other words the defendant can not be guilty or legally convicted when the State has violated there own Rule (5).  Rather its any law which simply makes the Chief Justice the administrative head of S.C. Courts with the power to make rules governing the practice and proceduring in all such courts.  If the chief justice has the power from S.C. Const. to make rules governing the practice and procedure in all Courts it is the Court duty to make sure my rights/case is conforming with these rules and procedures and law.  So thereforth the defendant ask that his indictment be dismissed with prejudice.  Since the state fail to follow the law.

[App. 18, 23–25 (footnote added).]  The State filed a return on May 4, 2010.  [App. 26–32.]

An evidentiary hearing was held on August 31, 2011, at which Petitioner was represented by Stephen D. Geoly ("Geoly").  [App. 33–100.]  At the conclusion of the hearing, the PCR court denied relief.  [App. 95–98.]  On January 3, 2012, the PCR court filed an order denying and dismissing the PCR application with prejudice.  [App. 105–19.] On January 27, 2012, Petitioner filed a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure.  [App. 120–25.]  The State filed a return, dated April 13, 2012.  [App. 126–30.]  On October 12, 2012, the PCR court filed an order denying the motion for reconsideration.  [App. 131–35; Doc. 12-2.]

A notice of appeal was timely filed.  [Doc. 12-3.]  Robert M. Pachak ("Pachak") of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf a *Johnson*

petition[4] for writ of certiorari in the Supreme Court of South Carolina. [Doc. 12-4.] The petition asserted the following as the sole issue presented:

> Whether defense counsel was ineffective in failing to subject the State's case to meaningful adversarial testing?

[*Id.* at 3.] At the same time he filed the *Johnson* petition, Pachak submitted a petition to be relieved as counsel. [*Id.* at 8.] After being notified that he could file a pro se response to *Johnson* petition [Doc. 12-5], Petitioner submitted a pro se petition, raising the following issues:

> Whether the PCR Court erred in finding that Counsel was not ineffective for failing to investigate?
>
> Whether the State Court's failure to sua sponte hold a competency hearing to establish Petitioner's competency to plead guilty violated Petitioner's procedural Due Process rights?

[Doc. 12-6.] The Supreme Court of South Carolina transferred Petitioner's PCR appeal to the South Carolina Court of Appeals, which denied the petition and granted Pachak's request to withdraw on June 12, 2014 [Doc. 12-7] and remitted the matter to the lower court on June 30, 2014 [Doc. 12-8].

### Second PCR Application

On October 3, 2011, Petitioner, proceeding pro se, filed a second PCR application. [Doc. 12-9.] Petitioner stated the following as his grounds for relief, quoted substantially verbatim:

> (a)    Newly discovered evidence

---

[4]A *Johnson* petition is the state PCR appeal analogue to an *Anders* brief; a brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim. *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

(b)    Ineffective Assistance of Counsel

(c)    Insufficient evidence

[*Id.* at 3.]  In support of his grounds for relief, Petitioner submitted a ten-page memorandum. [*Id.* at 10–19.] The State filed a return and motion to dismiss, dated July 10, 2012. [Doc. 12-10.]  In the motion to dismiss, the State argued Petitioner's second PCR application should be summarily dismissed as successive and untimely.  [*Id.*]  Petitioner filed a reply [Doc. 12-11], and on July 9, 2014, the PCR court filed a conditional order of dismissal, informing Petitioner that the court intended to dismiss Petitioner's second PCR application with prejudice unless Petitioner provided specific reasons, within twenty days of service of the conditional order, why the court should not dismiss the application [Doc. 12-12].  As of the date Respondent filed its motion to dismiss in this action, Petitioner had not responded to the conditional order.  [*See* Doc. 12 at 5.]

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on August 1, 2014.  [Doc. 1.] Petitioner raises the following grounds for relief, quoted substantially verbatim, in his Petition pursuant to 28 U.S.C. § 2254:

**GROUND ONE:**    Involuntary and Constitutionally Invalid Plea

*Supporting facts*:    Please See: Memorandum Of Law In Support Of Ground One

**GROUND TWO:**    Ineffective Assistance Of Defense Counsel in Failing To Investigate And Prepare For Trial

*Supporting facts*:    Please See: Memorandum Of Law In Support Of Ground Two

**GROUND THREE:** Ineffective Assistance Of Defense Counsel For Advising Petitioner To Plead Guilty Although Defenses Existed For Trial

*Supporting facts:* Please See: Memorandum Of Law In Support Of Ground Three

**GROUND FOUR:** Prosecutorial Misconduct

*Supporting facts:* Please See: Memorandum Of Law In Support Of Ground Four

[Doc. 1 at 5–9.] In his memorandum of law in support of the Petition, Petitioner asserts the following supporting facts, quoted substantially verbatim:

1.     Involuntary and Constitutionally Invalid Plea

In the PCR Court's Order, Judge Keesly found that Petitioner failed to meet his burden of proof in showing his guilty plea was involuntary. The Court further found Petitioner's pleas were made of his own free will and accord, without coercion. The Court also found that evidence in the record and testimony at the PCR hearing overwhelmingly reflected the plea was knowingly and voluntarily enter. (App. 116).

During the plea proceedings, the Prosecutor gave the State's factual basis for the Court to accept the plea to the charges as required of the State pursuant to the mandates of Rule 11, FRCrimP and Boykin v. Alabama, 395 U.S. 238 (1969) (App. 12, Lns. 11–24). When asked by the Court, if Petitioner understood and agreed with the conduct described by the State Prosecutor, the Petitioner stopped the plea to discuss this with Plea Counsel and thereby was a pause. The Court inquired whether there was a problem to be resolved and the State's interpreter answered, "No you can continue, please." The Court found a substantial basis for the plea and accepted the plea as voluntarily, knowingly, and intelligently entered with advice of Competent Counsel. (App. 13, Lns. 2–19). Earlier during the plea proceedings, the Court asked Counsel, "In your opinion does he (Petitioner) understand the charges, the punishments and his rights?" Plea Counsel answered, "He does." (App. 5, Lns. 11–13. Let us note that Boykin v. Alabama, and Rule 11, FRCrimP required the

7

defendant, or his interpreter in this case, to affirmatively answer whether he understands the charges and whether or not he agrees with the State's factual basis for the charges before the Court may accept the Petitioner's plea. These mandates were not followed in this instant case. This is a vitally important factor when considering the lack of evidence by the State of the charge crimes. Let us review further.

The indictments and the State's factual basis for the charges alleged Petitioner committed a sexual battery upon both of the alleged victims. However, there no and never has been any evidence of a sexual battery being committed by the Petitioner. The very limited Rule 5/Discovery material produced by the State was void of a sexual battery. Statements and One (1) Incident Report gave description of a possible Lewd Act. See, (Exhibits 1, 2, and 3). The alleged victims were apparently interviewed by the Saluda County DSS, but no notes or results of the interview were provided in any discovery although Petitioner was arrested thereafter as a result from the interviews. (Exhibits)

Petitioner could not have realized or understood that he was pleading to the conduct of a sexual battery as there were no statements or other evidence proving such. Furthermore, Counsel never even once entertained the idea of having Petitioner plead to a lesser or lesser-included offenses of ABHAN or Lewd Act Upon a Minor, or even Incest. It is inconceivable that Counsel would not at least attempt to obtain the DSS records or anything else before advising Petitioner to plead guilty to these serious charges.

It is quite obvious that the main focus of this entire case was the coersion and threat of Petitioner receiving fifty (5) years in prison if he went to trial. This was stressed very hard in this case. (App. 5, Lns. 15–18; App. 42, Lns. 9–20; App. 43, Ln.6–App. 44, Ln.7; App. 50, Lns. 12–17; App. 52, Ln. 24–App. 53, Ln. 17; App. 60, Lns. 10–12; App. 68, Ln. 13–App. 69, Ln. 9; App 70, Lns. 1–23; App. 81, Ln. 15–App. 82, Ln.3; App. 90, Ln. 1–App. 91, Ln.9; App. 92, Lns. 14–20). Plea Counsel stooped as far as coercing Petitioner's into writing a letter to the Solicitor asking for the ten (10) year sentence. (App. 70, Lns. 17–23). Yet, in Petitioner's Wife's statement, she stated that when she confronted the alleged victim about any abuse, she would not answer. See: (Exhibits and ).

8

Plea Counsel tried to focus the PCR Court as to how devestating the two (2) alleged victims testimony would be at trial. However, he did not mentioned what they would testify to. (App. 63, Lns. 18–22; App. 69, Lns. 4–10; App. 70, Lns. 1–3). Counsel spent a very short amount of time discussing this case with Petitioner. Actually Counsel did not know how many times he visited with Petitioner in the two and a half (2 ½) years he was on the case. (App. 66, Lns. 24–App. 67, Ln. 1; App. 67, Lns. 22–24; App. 68, Lns. 13–17). Furthermore, Counsel did not even know whether Petitioner realized he was going to trial or to plead guilty when he came to Court on the day of his plea. (App. 82, Lns. 9–12). The plea here could not be considered as a voluntary act or choice by the Petitioner. Now comes this law analysis in regards.

***

2.    Ineffective Assistance Of Defense Counsel

    A.    Failure To Investigate And Prepare For Trial

Counsel has an affirmative duty to investigate a case assigned to him regardless of any addmisions of guilt by his client. Petitioner never stated to Counsel at any time he was guilty of the charged offenses before the plea. Defense Counsel in this case avoided any skilled effort to investigate this and/or prepare for trial. His only intentions were to have Petitioner plead guilty with minimum effort as possible. (App. 63, Lns. 11–22; App. 66, Lns. 4–17; App. 67, Lns. 22–24; App. 68, Lns. 13–16; App. 70, Ln. 18–App. 71, Ln. 8).

It is quite obvious Counsel failed to review the State's evidence and the charges with Petitioner. If Counsel had reviewed the evidence and charges he would have noticed there was no evidence anywhere proving the allegations of a sexual battery as charged within both indictments. The police report and the alleged victims' statements were void of the essential element of a sexual battery in the first instance. See, (Exhibits 1, 2, 3 and 4).

Counsel testified that Petitioner was alone with the two alleged victims at times even though there were six people living together in the Petitioner's trailor. (App. 62, Ln. 18–App. 63, Ln. 7). Counsel never attempted to talk with the additional two people living in the trialor to determine what their testimony

9

would be.  In the Mother's statement, she stated that when she asked her daughter if her father had been touching her, the daughter would not answer.  According to the youngest daughter's statement, the alleged sexual abuses happened in Greenwood County and not Saluda County as alleged in the Indictments.  See (Exhibits 1, 2, 3 and 4).  The The Mother further stated she asked her daughter if she wanted to move to Virginia and she said no since she had already planned to move to Mexico with dad.  See (Exhibit ).  Counsel failed to follow up on any of the available information or visit the trailor to determine the layout of the living quarters or to determine the reliability of the alleged victims' testimonies.

Counsel received discovery consisting of an Incident Report, Statements made by the alleged victims and their Mother, and Petitioner's criminal record which was void of any prior record.  The alleged victims were apparently interviewed by the DSS of Saluda County, South Carolina, but no notes or reports from the interview were provided in any discovery, nor were requested by or provided to Counsel although Petitioner was arrested thereafter as a result of the DSS interviews.  See (Exhibit The government's obligation to make disclosures of favorable material under Brady v. Maryland is pertinent not only to an accused's preparation for trial but also to his determination of whether the plead guilty; the defendant is entitled to make that decision with full awareness of favorable material evidence known to the government.  Gibson v. State, 314 S.C. 515, 514 S.E.2d 320 (1999).  Here, Plea Counsel could be found ineffective in failing to procure relevant discovery materials, and he should be.  Kolle v. State, (Opinion No. 26771, Feb. 16, 2010).

Counsel never requested nor received results of any forensic exams.  There were no records of any physical, psychological, or behavioral exams being performed upon the alleged victims, unless the Saluda County DSS made them.  Therefore, it was axiomatic that Counsel should have requested these exams to establish the probability of the sexual conduct of which the Petitioner was accused, specifically since there was nothing in the record or in the course of Counsel's interview with the alleged victims that they were ever asked about family related issues that could give rise to the accusations.  Counsel never sought any medical or counseling records that may have been used to establish Petitioner's innocence.  It inconceivable that Counsel would not

obtain an independent CSC victim behavioral and forensic evidence expert in light of the absence of any tests or exams by the State.

Expert testimony concerning common characteristics of sexual assault victims and the range of responses to sexual assault encountered by experts is admissible. State v. Weaverling, 337 S.C. 365, 523 S.E.2d 787 (1999). Additionally, the Court in Weaverling noted, when facts of a case raise questions of credibility or accuracy that might not be explained by experiences common to jurors - like reactions of child victims of sexual abuse - expert testimony on general behavioral characteristics of such victims should be admitted. Id. at 794. Here, the alleged victims exhibited none of characteristics of a sexual abused child. The lack of common behavioral characteristics in the alleged victims could have been used in trial to reinforce the defense's position that no sexual assault occurred. Where the only evidence of a crime was inconsistent statements and no corroborating physical forensic evidence at all, Counsel provided ineffective assistance in failing to obtain any experts to refute that Petitioner was the perpatrator of an assault. Pauling v. State, 331 S.C. 606, 503 S.E.2d 468 (S.C. 1998). Counsel has a duty to make a reasonable investigation or to make a reasonable investigation unnecessary. Strickland v. Washington, 466 U.S. 668 (1984). Counsel had an additional obligation to investigate possible methods for impeaching the prosecution's witnesses. Tucker v. Ozmint, 350 F.3d 433 (4th Cir. (D.S.C. 2003). Independent experts and their documents associated with their conclusions to CSC victim behavioral diagnosis were vital to the position of the defense that no sexual assault (battery) occurred, and failure to produce either, prejudiced Petitioner into pleading guilty instead of going to trial. Without Counsel's error here, the result of the proceedings would have been different. Judge v. State, 321 S.C. 554, 471 S.E.2d 146 (1994). Defense Counsel's failure to investigate his options and make a reasonable choice between them forecloses any strategic decision that may have existed. Jackson v. Herring, 42 F.3d 1350 (11th Cir. 1995). There could not have been any "reasonable trial strategy" by Counsel's failure to adequately investigate and prepare for trial. This deficient performance cannot deem harmless error in this case. State v. Weaverling, 337 S.C. 365, 523 S.E.2d 787 (1999). Counsel's representation was below the standard of reasonableness and, but for Counsel's errors, there is a

reasonable probability that Petitioner would not have pled guilty and would have insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52, 58–59 (1985); Alexander v. State, 303 S.C. 539, 542, 402 S.E. 2d 484, 485 (1991).

      B.    Advising Petitioner To Plead Guilty Although Defenses Existed For Trial

Note: [In reference to this ground, Petitioner is using the facts of the previously argued grounds (Ground (1.) And (2.(A)) in support of this particular ground for relief, with additional facts]

The Plea Court asked Petitioner, "Do you want a jury trial?"  The interpreter answered, "No."  (App. 9, Lns. 11, 12).  However, the Court failed to inquire from Defense Counsel or Petitioner whether any defenses existed for trial.  As previously argued within our Grounds (1.) And (2.(A)) of this Memorandum, there were many defenses and reasons to proceed to trial.  There is, yet, another reason and defense to these serious charges existing for trial that Counsel could and should have argued pre-trial or throughout trial that could have had the charged dismissed altogether.

In the State's factual basis and in both Indictments, it was alleged that Petitioner committed sexual batteries upon the alleged victims over the course of years.  It is important to point out that Counsel should have been fully aware that Petitioner made many trips (long distances) as part of his job and traveling during the alleged times of occurance of these charges.

The body of the indictment is the vital part of the indictment which must contain the necessary elements of the offense and fully inform the accused of the nature and cause of the accusation against him.  It is generally not necessary that time of the commission of the offense be definitely stated except where time is material either as an element of the offense or as affording the accused (as in this case) a bar to the proceeding.  However, S.C. Code, § 17-19-20, expressly requires that the indictment allege the time.  See, also, S.C. Const. Art. 1, § 11.

While it is true that the State need not prove the exact date set-forth in the indictments unless time is an essential

element of the offense or time in the indictments unless time is an essential element of the offense or time is made part of the description as here, in this case. With the language of the indictments being so very broad in regard to time of the commission of the offenses, Petitioner could not possibly defend against the offenses nor could he rely upon an <u>alibi defense</u>, even if Counsel sought to obtain any evidence in regards. Furthermore, the burden of proof of the time of commission of these alleged sexual batteries beyond a reasonable doubt shifted by the language of the indictments alone, because there is nothing to hold the State to prove the age of the alleged victims at the time of the alleged assaults which could be the difference between being found guilty of the greater charge versus a lesser degree of CSC which would have been a considerably less punishment Petitioner could receive if he went to trial. No challenge to the indictments allowed the State to convict and have Petitioner to plead guilty to a sexual battery which could have happened during anytime between the broad time span, if it happened at all. See, in regards, <u>Rallo v. State</u>, 403 S.E.2d 653 (1991). A defendant is entitled to be sufficiently appraised of the offense so that he can adequately prepare his defense. This was not possible in this case. <u>State v. Hardee</u>, 279 S.C. 409, 413, 308 S.E.2d 521, 524 (1983). Although an indictment does not confer subject matter jurisdiction, due process requires that a criminal defendant be properly served with a valid indictment. <u>State v. Smalls</u>, 364 S.C. 343, 613 S.E.2d 754 (S.C. 2005). A trial or plea cannot be fair unless the nature of the charges against the defendant are adequately made known to him in a timely fashion. See, <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Defense Counsel should always challenge an indictment if time of the occurance of the alleged crime is in anyway uncertain. <u>State v. Wilson</u>, 315 S.C. 289, 433 S.E.2d 864 (1993). Counsel had plenty of time and opportunity before a jury would be sworn to challenge the sufficiency of these indictments. Here, Defense Counsel made no effort to move to dismiss or quash the indictments or argue against them as a defensive strategy which constituted ineffective assistance. <u>Sosebee v. Leeke</u>, 293 S.C. 531, 362 S.E.2d 22 (1987). There existed many defenses to go to trial that would have put the State's case to a meaningful adversarial test. Had Petitioner proceeded to trial, he may not have been found guilty by a jury at all. The plea in this case does not represent a voluntary course of action open to the Petitioner. <u>Brady v. U.S.</u>, 397 U.S.

742, 90 S.Ct. 1463 (1970); <u>Noland v. French</u>, 134 F.3d 208 (4th Cir. 1998). Counsel had a duty to investigate, make challenges against the Indictments, and prepare for trial, specifically where the State lacked any credible evidence to a sexually abused victim or sexual battery being committed and to litigate these stated defenses as previously argued within grounds (1.) And (2.(A.)) of this Memorandum. An attorney competency is measured according to what an objectively reasonable Counsel would have done under the circumstances existing at the time of their representation. An objectively reasonable Counsel would not advise Petitioner to plead guilty when there were so many reasons and defenses under the circumstances existing during the time of plea Counsel's representation in this case. <u>Savino v. Murray</u>, 82 F.3d 593, 599 (4th Cir. 1996). Defense Counsel was indeed ineffective. Petitioner was prejudiced by Counsel's ineffectiveness, and he certainly would have proceeded to trial had he known Counsel's representation would have been so unreasonable. <u>Hill v. Lockhard</u>, 106 S.Ct. 366 (1985); <u>U.S. v. Bowman</u>, 124 S.Ct. 1523 (C.A.4, S.C. 2003); <u>Ostrander v. Green</u>, 46 F.3d 347 (4th Cir. 1995).

3.    Prosecutorial Misconduct

The prosecutor indicted Petitioner to be tried for Criminal Sexual Conduct in the first (1st) and Criminal Sexual Conduct in the second (2nd), which requires proof beyond a reasonable doubt that a sexual battery occurred in both charges. However, there was no and never has been any evidence of a sexual battery being committed by the Petitioner. The very limited Rule 5/Discovery material produced by the State was void of a sexual battery. Statements and one (1) Incident Report gave description of a possible Lewd Act Upon A Minor. See (Exhibits 1, 2, and 3). The alleged victims were also apparently interviewed by the Saluda County DSS, but no notes or results from the interview were provided in any discovery as a result of the DSS interviews. See (Exhibits and ). The government's obligation to make disclosures of favorable material under <u>Brady v. Maryland</u> is pertinent not only to the accused's preparation for trial but also to his determination of whether to plead guilty; the defendant is entitled to make that decision with full awareness of favorable material evidence (tending to prove guilt or innocence) known to the government. <u>Gibson v. State</u>, 314 S.C. 515, 514 S.E.2d 320 (1999). The DSS interviews had to be material evidence

14

that could have made a serious impact in this case and the State prosecutors are still obligated to disclose this material and this Honorable Court can and should Order the Respondent to disclose this material to the Petitioner as soon as possible because his actual innocence lurks to be proven.

The prosecutor in a criminal case shall refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause. A prosecutor, also, shall make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information. ABA Rules of Professional Conduct, Rule 3.8(a)-(f). Rule 3.8(g) requires a prosecutor to disclose any new evidence that <u>may exonerate</u> a convicted defendant, whereas Rule 3.8(h) requires a prosecutor to try to overturn a conviction when he or she receives clear and convincing evidense that the convicted defendant did not commit the offense. The (ABA) believed that the problem of wrongful convictions was serious enough that it needed to enact Rule 3.8(g) and (h). Furthermore, State Agencies are committing further injustice against defendants who are convicted because of misconduct, regardless of the defendants guilt or innocense.

The evil-lurking from the State's actions is the possibility that Petitioner was convicted for reasons wholly irrelevant to his guilt or innocence. <u>State v. Liberte & Sims</u>, 336 S.C. 648, 521 S.E.2d 744 (1999). It is fundamentally unfair if the State proceeds against a defendant without making certain that he has access to materials integral to building an effective defense. <u>Mason v. Mitchell</u>, 320 F.3d 604 (6th Cir. 2003). Prosecutor's obligation of fairness to defendant includes duty to refrain from improper methods calculated to produce a wrongful conviction. <u>U.S. v. Campa</u>, 419 F.3d 1219 (11th Cir. 2005). This conviction should be overturned due to the Prosecutor's actions here in this case.

[Doc. 1-1 at 3–12 (emphasis in original).] As stated, on October 10, 2014, Respondent filed

a motion for summary judgment. [Doc. 11.] On December 12, 2014, Petitioner filed a

response in opposition. [Doc. 19.] Accordingly, the motion is ripe for review.

## APPLICABLE LAW

### Liberal Construction of Pro Se Petition

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When

16

determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong

18

case for relief does not mean the state court's contrary conclusion was unreasonable."

*Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).    Moreover, state court factual

determinations are presumed to be correct, and the petitioner has the burden of rebutting

this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions.  28

U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the

Constitution or laws or treaties of the United States" and requires that a petitioner present

his claim to the state's highest court with authority to decide the issue before the federal

court will consider the claim.  *Id.*  The separate but related theories of exhaustion and

procedural bypass operate to require a habeas petitioner to first submit his claims for relief

to the state courts.  A habeas corpus petition filed in this Court before the petitioner has

appropriately exhausted available state-court remedies or has otherwise bypassed seeking

relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and

provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)    (I) there is an absence of available State corrective process; or

>(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
>(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
>(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
>(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a

procedural bar to that claim by the South Carolina Supreme Court.  *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[5]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing

---

[5]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991).  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court.  S.C. App. Ct. R. 203(d)(3), 243.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).  As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim.  *Smith*, 477 U.S. at 533 (quoting

*Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional

23

claim is such that its legal basis is not reasonably available to the petitioner's counsel.  *Id.* at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default.  *Carrier*, 477 U.S. at 492.  To show actual prejudice, the petitioner must demonstrate more than plain error.  *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## DISCUSSION

**Procedurally Barred Claims**

Procedural default is an affirmative defense that is waived if not raised by respondents.  *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996).  If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim.  *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995).  Here, Respondent contends Grounds Three and Four are procedurally barred.  [Doc. 12.]  Respondent also argues Petitioner cannot overcome the default of these grounds because he cannot establish cause and prejudice or a miscarriage of justice.  [*Id.*]  Petitioner argues that, although labeled differently, these grounds were presented in the *Johnson* petition and/or pro se petition for writ of certiorari in the Supreme Court of South Carolina and also appears to argue he can establish cause for any procedurally barred claims of ineffective assistance of defense counsel under *Martinez v. Ryan*, — U.S. —, 132 S.Ct. 1309 (2012), because PCR counsel was ineffective.  [Doc. 19 at 3–10.]  The Court agrees that these grounds are procedurally barred.

### *Ground Three*

In Ground Three, Petitioner argues plea counsel was ineffective for advising Petitioner to plead guilty although defenses existed for trial.  [Docs. 1 at 8; 1-1 at 9–11.] Ground Three is procedurally barred because it was not presented to the Supreme Court of South Carolina in either the *Johnson* petition or Petitioner's pro se petition for writ of certiorari.  [*See* Docs. 12-4; 12-6.]  Although Petitioner presented ineffective assistance of counsel claims in his *Johnson* petition and his pro se petition, the allegations of ineffective assistance in those petitions were different from how Ground Three is raised in this Petition. In the *Johnson* petition, Petitioner alleged "[d]efense counsel was ineffective in failing to subject the State's case to meaningful adversarial testing" and focused on the factual allegations related to plea counsel seeing Petitioner only two times for about five minutes each, failing to investigate the case, failing to review discovery material with Petitioner, and failing to require a medical examination of the victims.  [Doc. 12-4 at 5.]  In his pro se petition for writ of certiorari, Petitioner raised two claims: (1) ineffective assistance of counsel for failing to investigate and (2) a due process violation based on the state court's failure to hold a competency hearing to establish Petitioner's competency to plead guilty. [Doc. 12-6 at 5.]  Accordingly, Petitioner did not raise to the Supreme Court of South Carolina a claim of ineffective assistance of counsel for advising Petitioner to plead guilty when defenses existed that could have been presented at trial.  Because this ground was not fairly presented to the Supreme Court of South Carolina, it is procedurally barred from federal habeas review absent a showing of cause and actual prejudice.  *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would

be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### Ground Four

In Ground Four, Petitioner alleges prosecutorial misconduct. [Docs. 1 at 9; 1-1 at 11–12.] Ground Four is procedurally barred because it was not presented to the Supreme Court of South Carolina in either the *Johnson* petition or Petitioner's pro se petition for writ of certiorari. [*See* Docs. 12-4; 12-6]. Because this ground was not fairly presented to the Supreme Court of South Carolina, it is procedurally barred from federal habeas review absent a showing of cause and actual prejudice.

### Cause and Prejudice

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Carrier*, 477 U.S. at 488. *But see Martinez*, 132 S. Ct. at 1315 ("Inadequate assistance of counsel at *initial-review* collateral proceedings *may* establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." (emphasis added)). Here, Petitioner appears to argue that he can establish cause and prejudice for any procedurally defaulted claim under *Martinez* because PCR counsel was ineffective for failing to raise these issues. [Doc. 19 at 8–10.]

In *Martinez*, the Supreme Court elaborated,

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in

26

the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318. Accordingly, Petitioner may establish cause for the default of these grounds if he demonstrates that (1) his PCR counsel was ineffective and (2) the underlying ineffective assistance of trial counsel claim is a substantial one, i.e., it has some merit.

As an initial matter, Ground Four alleges prosecutorial misconduct; accordingly, Petitioner has made no underlying ineffective assistance of trial counsel claim in this ground and, thus, Petitioner has not demonstrated cause to excuse the procedural default. *See Martinez*, 132 S.Ct. at 1318 (holding that a petitioner may establish cause for the default if he demonstrates his PCR counsel was ineffective and that *the underlying ineffective assistance of trial counsel claim* is a substantial one, i.e., it has some merit). With respect to Ground Three, Petitioner argues plea counsel was ineffective for advising Petitioner to plead guilty although defenses existed for trial and focuses his argument on counsel's failure to challenge two alleged deficiencies in the indictment—that "the language of the indictments [is] so very broad in regard to time of the commission of the offenses" and "there is nothing to hold the State to prove the age of the alleged victims at the time of the alleged assaults." [Doc. 1-1 at 10.] Petitioner concedes that it is not generally necessary for time to be definitely stated in an indictment unless time is an essential element of the crime. [*Id.*] The South Carolina Court of Appeals has noted that "[t]ime is not a material element of . . . first-degree criminal sexual conduct with a minor" and "[t]he State is not required to denote the precise day, or even year, of the accused conduct in an

27

indictment charging criminal sexual conduct." *State v. Tumbleston*, 654 S.E.2d 849, 855 (S.C. Ct. App. 2007) (finding that a time period of 2001 through 2004 was sufficient for indictments charging a defendant with first degree criminal sexual conduct with a minor and committing a lewd act on a minor and "reject[ing] the notion that a specified time period prevented [the defendant] from adequately preparing his defense to the charges). Here, the indictments include the time period when the sexual batteries occurred—between January 1, 2004 and March 7, 2005, for the charge of criminal sexual conduct with a minor - 2nd degree, and between November 24, 2004 and November 24, 2005, for the charge of criminal sexual conduct with a minor - 1st degree—and the victims' dates of birth.[6] [App. 102, 104.] Therefore, the time periods in the indictments are sufficient under *Tumbleston*, and the ages of the alleged victims can be determined by using their dates of birth and the time period when the sexual batteries occurred. Petitioner's arguments with respect to the indictments are without merit; therefore, plea counsel could not have been ineffective for failing to challenge the indictments on these bases, and, thus, PCR counsel could not have been ineffective for failing to argue that trial counsel was ineffective. Accordingly, Petitioner has failed to show cause for his default of Ground Three, and Grounds Three and Four are procedurally barred from consideration by a federal habeas court and should be dismissed.[7]

---

[6]The copies of the indictments included in the Appendix have the victims' names and dates of births redacted; however, the Court can determine from the indictments that the dates of birth were included in the indictments. [App. 102, 104 (copies of indictments, both including "DOB" before a redacted portion of the text).]

[7]Petitioner also appears to argue he can overcome the procedural bar because he is actually innocent of the crimes. [Doc. 19 at 10.] "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually

**Merits of Remaining Grounds**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses

_____

innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Carrier*, 477 U.S. at 496. The Supreme Court has elaborated that

> a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief. "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons."

> . . . .

> . . . To invoke the miscarriage of justice exception . . . , a petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."

*McQuiggin v. Perkins*, — U.S. —, —, 133 S.Ct. 1924, 1935 (2013) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Here, Petitioner has failed to make the necessary showing of actual innocence. Petitioner states that his "Grounds One–Four, all work together showing Petitioner is actually innocent of the substantive offenses." [Doc. 19 at 10 (emphasis in original).] Without more from Petitioner, such as new evidence, the Court cannot conclude that Petitioner has established that he is actually innocent, i.e., that no reasonable juror would have convicted him.

29

independent meaning.").  The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

### *Ground One*

In Ground One, Petitioner argues his plea was involuntary and constitutionally invalid because the trial judge asked plea counsel whether Petitioner understood the charges, the punishments, and his rights rather than asking Petitioner; there was not a sufficient factual basis for the charges to which Petitioner pled guilty; Petitioner could not have realized or understood that he was pleading to the conduct of a sexual battery; and Petitioner was coerced.[8] [Doc. 1-1 at 3–4.] A guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant," *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), and may be invalid if it was induced by threats or misrepresentations, *Brady v. United States*, 397 U.S. 742, 755 (1970) (holding that a defendant's guilty plea must be voluntary to be valid). However, a defendant's statements at the guilty plea hearing are presumed to be true. *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Unsupported allegations on appeal or in a collateral proceeding are insufficient to overcome representations made during the guilty plea hearing. *Via v. Superintendent, Powhatan Corr. Ctr.*, 643 F.2d 167, 171 (4th Cir. 1981).

The PCR court made the following findings as to Petitioner's guilty plea:

> This court finds that [Petitioner] has failed to meet his burden of proof in showing that his guilty plea was involuntary. At the plea hearing [Petitioner] indicated to the plea judge that counsel explained to [Petitioner] the charges, the possible punishments, and [Petitioner's] constitutional rights, and [Petitioner] indicated that he understood the explanation provided by counsel. The plea judge asked [Petitioner] if

---

[8]The Court notes that, in his pro se petition for writ of certiorari, Petitioner's argument with respect to his guilty plea was that his procedural due process rights were violated when the state court failed to sua sponte hold a competency hearing to establish Petitioner's competency to plead guilty. [Doc. 12-6 at 15–16.] However, Respondent did not argue this ground is defaulted and, as stated, procedural default is an affirmative defense that is waived if not raised by respondents. *Gray*, 518 U.S. at 165–66.

> [Petitioner] understood and knew about his right to a jury trial, and [Petitioner] indicated that he did not want a jury trial. [Petitioner] told the plea judge that he had not been threatened by anyone into pleading guilty.  Additionally, [Petitioner] indicated to the plea judge that he was satisfied with counsel's representation and that counsel had done everything he could to help [Petitioner].  [Petitioner] told the plea judge that he was pleading guilty to both charges because [Petitioner] was guilty of both charges.  This Court finds the overwhelming evidence in the record and presented through the testimony of the witnesses at the hearing reflects that the plea was knowingly and voluntarily entered.  Boykin v. Alabama, 395 U.S. 238 (1969); Vickery v. State, 258 S.C. 33, 186 S.E.2d 827 (1972). Therefore, this Court finds this allegation is denied and dismissed.

[App. 116 (citations to plea transcript omitted).]  The PCR court's finding that Petitioner's guilty plea was knowingly and voluntarily entered is supported by the record.  Petitioner, through an interpreter, affirmed (1) he understood the charges, the possible punishments, and his rights, including his constitutional right to a jury trial [App. 5:21–6:4]; (2) he understood the charges in each indictment [App. 6:5–23, 7:10–24]; (3) he understood the maximum penalties [App. 7:2–9, 8:3–11]; (4) he understood his sentences could run consecutively [App. 8:12–22]; and (5) he understood what rights he was giving up by pleading guilty [App. 8:23–9:12].  Petitioner acknowledged that he did not want a jury trial and that no one had threatened him in any way in order to get him to plead guilty.  [App. 9:11–15.]  Petitioner's responses through the plea colloquy indicate he understood what he was doing by pleading guilty, he had sufficiently consulted with his attorney, and he was knowingly and voluntarily entering a guilty plea.  Thus, the PCR court's decision with respect to Petitioner's involuntary guilty plea claim was not contrary to nor an unreasonable application of federal law, as determined by the Supreme Court, or based on an

32

unreasonable determination of the facts before the PCR court; therefore, Petitioner is not entitled to habeas corpus relief on Ground One.

### Ground Two

In Ground Two, Petitioner argues plea counsel was ineffective for failing to investigate and prepare for trial. [Doc. 1-1 at 7–9.] Petitioner contends plea counsel failed to review the State's evidence and the charges with Petitioner; failed to talk with others living in the trailer; failed to follow up on available information or visit the trailer to determine the layout of the living quarters; failed to procure relevant discovery materials, including forensics, physical, psychological, or behavior exams of the victims; and failed to obtain an expert. [*Id.*] When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[9]  *Richter*, 131 S.Ct. at 785. "A state court must be granted a deference and

_____

[9]In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. 668, 687 (1984).  To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692.  The Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

In the specific context of a guilty plea, to satisfy the prejudice prong of *Strickland*, a prisoner must show that "there is a reasonable probability that, but for counsel's errors, [the prisoner] would not have pleaded guilty and would have insisted on going to trial." *Hill*

latitude that are not in operation when the case involves review under the Strickland standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

---

*v. Lockhart*, 474 U.S. 52, 59 (1985). The Supreme Court further explained,

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. . . . As we explained in *Strickland v. Washington*, *supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id.*, 466 U.S., at 695, 104 S.Ct., at 2068.

*Hill*, 474 U.S. at 59–60.

Here, the PCR court evaluated plea counsel's performance under the standards set forth in *Strickland* and *Hill*. [App. 110–16.] The PCR court found, with respect to the factual allegations raised in the Petition,

> b.    Failure to Investigate
>
> This Court finds that [Petitioner's] allegation that counsel was ineffective for failing to investigate is without merit. [Petitioner] asserts that counsel was ineffective for failing to obtain a medical expert, visit the scene of the crime, and ask [Petitioner] certain questions about [Petitioner's] guilt. This Court finds that [Petitioner's] testimony is not credible. This Court does find counsel's testimony to be credible. Counsel testified that he filed a discovery motion, reviewed the discovery materials with [Petitioner], and was able to speak with the two victims and ascertain what their testimony would be at trial. Counsel testified that [Petitioner] never indicated that he wanted to go to trial throughout counsel's representation and that had [Petitioner] informed counsel he wanted to proceed to trail counsel would have prepared [Petitioner's] case for trial. Counsel testified that obtaining a forensic expert would not have been helpful because the youngest victim did not allege forceful penetration and that after so many months there would be no physical evidence.
>
> To establish counsel was inadequately prepared, [a petitioner] must present evidence of what counsel could have discovered or what other defenses could have been pursued had counsel been more fully prepared. Jackson v. State, 329 S.C. 345, 495 S.E.2d 768 (1998). The "brevity of time spent in consultation, without more, does not establish that counsel was ineffective." Easter v. Estelle, 609 F.2d 756, 759 (5th Cir. 1980). When claims of ineffective assistance of counsel are based on lack of preparation time, a[ petitioner] challenging his conviction must show specific prejudice resulting from counsel's alleged lack of time to prepare. United States v. Cronic, 466 U.S. 648 (1984); U.S. v. LaRouche, 896 F.2d 815 (4th Cir. 1990). Here, [Petitioner] could not point to any specific matters counsel failed to discover which would have caused him to proceed with a jury trial instead of pleading guilty. This Court finds [Petitioner] offered no evidence at the PCR hearing that counsel could have found that would have been likely to have any outcome more favorable to [Petitioner].

35

[Petitioner] did not produce any witnesses or offer any other evidence from which this Court could conclude that the outcome of the case would likely have been different, had that evidence been developed. Therefore, this Court finds that this allegation is denied and dismissed.

***

    d.    Failure to Prepare Potential Defense, Challenge the Chain of Custody, Inform [Petitioner] of Evidence against him, and Failure to Inform of Elements of Charges

[Petitioner] asserts that counsel was ineffective for failing to prepare and investigate potential defenses, failing to challenge the chain of custody, failing to inform [Petitioner] of the evidence against him, and failing to inform [Petitioner] of the elements of the charges. This Court finds that [Petitioner] failed to meet his burden of proof as to these allegations. This Court finds [Petitioner's] testimony is not credible. This Court does find counsel's testimony to be credible. Counsel testified that he explained the charges against [Petitioner] to [Petitioner] and that [Petitioner] understood the elements of the charges he faced. Counsel testified that [Petitioner] never denied he was not guilty which made it very difficult to prepare a defense. Counsel testified that he explained to [Petitioner] what would be presented at trial and what counsel could do in terms of a defense at trial. Counsel testified that he discussed the state's evidence with [Petitioner] and the options available to [Petitioner]. With regard to [Petitioner's] claim that counsel failed to challenge the chain of custody, this Court finds [Petitioner] did not present evidence or testimony as to what counsel should have challenged concerning the chain of custody.

This Court finds and the record reflects that [Petitioner] admitted to the plea judge that he was guilty of the specific elements of the crimes. This Court further finds that the facts of the case recited by the solicitor at the plea hearing were not long or convoluted. [Petitioner] clearly indicated to the plea judge that he understood the charges against him and that [Petitioner] wanted to plead guilty because he was guilty. To establish counsel was inadequately prepared, [a petitioner] must present evidence of what counsel could have discovered or what other defenses could have been pursued had counsel

been more fully prepared.  Jackson v. State, 329 S.C. 345, 495 S.E.2d 768 (1998).  The "brevity of time spent in consultation, without more, does not establish that counsel was ineffective." Easter v. Estelle, 609 F.2d 756, 759 (5th Cir. 1980).  When claims of ineffective assistance of counsel are based on lack of preparation time, [a petitioner] challenging his conviction must show specific prejudice resulting from counsel's alleged lack of time to prepare.  United States v. Cronic, 466 U.S. 648 (1984); U.S. v. LaRouche, 896 F.2d 815 (4th Cir. 1990).  Here, [Petitioner] could not point to any specific matters counsel failed to discover which would have caused him to proceed with a jury trial instead of pleading guilty.  This Court finds [Petitioner] offered no evidence at the PCR hearing that counsel could have found that would have been likely to have any outcome more favorable to [Petitioner].  Therefore, this Court finds that this allegation is denied and dismissed.

> e.    Failure to Review Discovery with [Petitioner] and the Evidence against [Petitioner]

This Court finds that [Petitioner's] allegations that trial counsel was ineffective for failing to review the discovery materials with [Petitioner] and for failing to review the evidence against [Petitioner] with him are without merit.  This Court has already found that counsel discussed the state's evidence with [Petitioner].  Additionally, counsel testified that he filed a discovery motion and reviewed the discovery materials with [Petitioner].  Moreover, counsel testified that he explained to [Petitioner] what the victims' and [Petitioner's] wife's testimony would be at trial, that the wife was a neutral witness but that the victims' testimony would have been devastating and very effective.  This Court finds that [Petitioner] has failed to show that counsel's performance was deficient in any way and that [Petitioner] was prejudiced; therefore, this Court finds that these allegations are denied and dismissed.

[App. 112–16.]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* and *Hill* standards, which are the applicable Supreme Court precedents.  Second, the record fails to demonstrate the PCR court confronted a set

of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland* or *Hill*. The facts supporting the PCR court's reasoning are well founded in the record from the plea and in counsel's testimony at the PCR hearing. [App. 4–14, 61–88.] Therefore, Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief on this ground.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 10, 2015
Greenville, South Carolina